UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
IN RE CONNETICS SECURITIES            :   Master File No.  06 CV 11496 (SWK)
LITIGATION                            :
                                          **CLASS ACTION**
                                      :
                                      :
------------------------------------- X

# DECLARATION OF JOHN HIGGINS
# IN SUPPORT OF MOTION TO TRANSFER VENUE

| | |
|---|---|
| FENWICK & WEST LLP | CADWALADER, WICKERSHAM & TAFT LLP |
| 555 California Street, 12th Floor | One World Financial Center |
| San Francisco, CA  94104 | New York, NY 10281 |
| Telephone:  (415) 875-2300 | Telephone:  (212) 504-6112 |
| Facsimile:  (415) 281-1350 | Facsimile:  (212) 504-6666 |

Attorneys for Defendants Connetics Corp., Thomas G. Wiggans, C. Gregory Vontz, John Higgins, Lincoln Krochmal, Eugene A. Bauer, Andrew Eckert, Carl B. Feldbaum, Denise M. Gilbert, John C. Kane, Thomas D. Kiley, Leon E. Panetta, and G. Kirk Raab

I, John Higgins, declare as follows:

1. I joined Connetics as Chief Financial Officer in 1997, and served as Executive Vice President, Finance and Administration and Corporate Development, from January 2002 to December 2006. I left Connetics in mid-January 2007, shortly after it was acquired by Stiefel Laboratories, Inc. ("Stiefel"). Unless otherwise noted, I have personal knowledge of the facts stated below and, if called as a witness, I could and would testify competently to such facts.

2. Throughout my employment with Connetics, I lived in Northern California, near Connetics' headquarters in Palo Alto, California. I now live in San Diego, California, with my wife and two young children, ages one and five.

3. On January 16, 2007, I was appointed Chief Executive Officer of Ligand Pharmaceuticals, Inc., a publicly traded bio-technology company located in San Diego, California. As announced on January 31, 2007, Ligand is undergoing a major restructuring that includes the divestiture of all of its commercial brands and a 76 percent reduction in force. Ligand is also refocusing its business plan and restructuring its board of directors. These fundamental business changes, which are aimed at building value for Ligand's shareholders, are consuming my time and will continue to do so for the foreseeable future. The time necessary to attend meetings, hearings, pre-trial matters or trial proceedings in the Southern District of New York would significantly disrupt my business obligations at Ligand. Attending such proceedings in the San Francisco Bay Area would cause far less disruption to me, my family, and my professional colleagues at Ligand.

4. I have read the Consolidated Class Action Complaint ("Complaint") in which I have been named as a defendant. I understand that the Complaint alleges supposed misrepresentations made by Connetics in its financial reports and other public statements during

an alleged Class Period from January 27, 2004 through July 9, 2006 ("Class Period").

5.  At all times during my employment with Connetics, I worked at the Company's Palo Alto corporate headquarters. Among other responsibilities, I oversaw Connetics' Finance & Administration and Investor Relations groups, both of which were based in Connetics' Palo Alto headquarters. Together with the Legal Department, the Finance & Administration group was responsible for Connetics' accounting and public reporting activities, including the preparation of Connetics' financial statements, its filings on SEC Form10-K and 10-Q, and its press releases relating to financial performance. During the alleged Class Period, I worked closely with Steve Love, the Vice President of Finance & Administration, and Patrick O'Brien and James Goff, Directors of Investor Relations in 2005 and 2006 respectively. Messrs. Love, O'Brien and Goff were all based in Connetics' Palo Alto headquarters, and I understand that all three continue to reside in California.

6.  During the alleged Class Period, I also worked closely with Connetics' outside auditor, Ernst & Young ("E&Y") in connection with E&Y's quarterly review and annual audits of Connetics' financial statements. To the best of my knowledge, the E&Y personnel who worked on Connetics' matters during the alleged Class Period worked at E&Y's Palo Alto and San Jose, California offices. These E&Y employees include Scott Morrison and Joseph Muscat.

7.  Each Connetics' financial statement, public filing, and earnings release was drafted at Connetics' Palo Alto headquarters. Each Connetics' statement at issue in the Complaint was drafted at Connetics' Palo Alto headquarters. The Connetics employees who assisted in the drafting of Connetics' financial statements and related disclosures worked at Connetics' headquarters in Palo Alto, California. Connetics' documents supporting its financial statements and other public disclosures — including the documents related to Connetics' sales,

returns, rebates, accruals, contracts, inventory, forecasts, budgets, SEC filings and press releases — were created and maintained at Connetics' offices in California.

    8.    In March 2005, Connetics issued $200 million in convertible senior notes in a private placement conducted pursuant to Rule 144A of the Securities Act. It is my understanding that all of the transactional documents relating to that private placement, including the Registration Rights Agreement, the Indenture and the Form S-1 and S-1/A Registration Statements were prepared in California and executed by Connetics in Palo Alto, California. In addition, the due diligence conducted in connection with that private placement was performed in California. Goldman, Sachs & Co. ("Goldman") had the principal investment banking role in the private placement. The other investment bankers were CIBC World Markets Corp. ("CIBC"), Roth Capital Parters, LLC ("Roth") and Lazard Freres & Co. LLC ("Lazard"). Goldman's investment banking team was headed by Geoff Parker, a Managing Partner at Goldman, whose office is located in San Francisco, California. Mr. Parker supervised a small team of bankers, four out of five of whom worked out of Goldman's San Francisco office. Mr. Parker and his team were responsible for conducting due diligence, structuring the bond offering, and providing general banking services to Connetics to consummate the offering. In addition, all of CIBC's and Roth's bankers who were involved in the private placement were located in California. Under the terms of the indenture, Connetics was required to maintain "an office or agency" where the securities issued under the private placement may be surrendered for registration of transfer or exchange. Pursuant to those terms, Connetics used J.P. Morgan as its agent. At no time did Connetics maintain an office in the City of New York, either for purposes of the private placement or for any other reason. Moreover, it is my understanding that J.P. Morgan's services as agent and trustee were performed by personnel located at J.P. Morgan's

offices in San Francisco, California.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. This declaration is being executed on this 28th day of February, 2007, at San Diego, California.

_____
John Higgins

4